1

HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

SHERRI BLACK, individually and as
Personal Representative for the Estate of
Thomas Anthony Black,

9

10

Plaintiffs,

11

v.

12

UNITED STATES OF AMERICA, et al.,

13

Defendants.

14

CASE NO. C13-5415 RBL

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT
TRIBES' JOINT MOTION TO
DISMISS

15      THIS MATTER comes before the Court on Defendants Suquamish Indian Tribe,

16  Suquamish Tribal Police, Port Gamble S'Klallam Indian Tribe (PGST), PGST Tribal Police

17  (collectively, the "Tribes"), PGST Detective Greg Graves, and 25 John Doe Officers'[1] Joint

18  Motion to Dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter

19  jurisdiction. The Tribes contend that tribal sovereign immunity shields them and their officers

20  from suit in federal court.

21  _____

22      [1] Plaintiff has a pending Motion to Amend her Complaint to identify the John Doe
officers. [Dkt. #66]. She has known their identities for two years but failed to identify them last
23  time she was granted leave to amend in January 2014. She is months past the final deadline to
amend or join parties. Allowing her to amend the Complaint this late would unduly prejudice the
24  Defendants. For these reasons, Plaintiff's Motion to Amend is **DENIED**.

1    Plaintiff Sherri Black claims that neither the Tribes, nor their officers, are entitled to

2    tribal sovereign immunity because they were acting under color of state law when they entered

3    the Blacks' home, or alternatively, that they waived this immunity through treaty. Under the

4    circumstances of this case, tribal sovereign immunity extends only to the Tribes themselves and

5    not to the tribal officers. Accordingly, the Tribes' Joint Motion to Dismiss is GRANTED in part

6    and DENIED in part.

7                                   **I.       Background**

8    In December 2011, Suquamish and Port S'Klallam tribal police officers jointly executed

9    a tribe-issued misdemeanor arrest warrant for PGST member Stacy Stanley Callihoo.  At the

10   time, Callihoo was visiting Thomas Anthony Black at his home. Thomas Black lived with his

11   sister, Sherri Black. The Blacks are not Native Americans but live on fee land within the

12   boundaries of the Suquamish Reservation. At the request of the tribal police, two Kitsap County

13   Sheriff's department officers came to assist with the arrest. The tribal officers who coordinated

14   the arrest plan explained this tactical decision as an attempt to bring in additional backup and

15   appropriate state authority in the event that the residents of the home were non-tribal.

16   When the officers arrived at the Black's home, Sherri answered the door. The officers

17   entered without a search warrant. Sherri Black claims that the officers pushed her to the ground

18   and dragged her into a patrol car, causing her physical injury. Shortly after he entered the home,

19   Tribal Officer Greg Graves shot Thomas five times as he was lying on a couch. Graves claims

20   that Thomas pointed what appeared to be a gun at the officers. The officers then left the

21   residence and engaged in a standoff with Callihoo, who was finally arrested inside the Black

22   home hours later. Thomas received no emergency assistance during this time and he bled to

23   death from a wound to his femoral artery.

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT TRIBES' JOINT MOTION
TO DISMISS - 2

1      Sherri Black sued the United States and the Department of the Interior, the Bureau of

2  Indian Affairs, the Suquamish Indian Tribe and its tribal police, the PGST and its tribal police,

3  PGST Detective Greg Graves, Kitsap County and its Sheriff's Office, and several unnamed

4  officers. She asserts 42 U.S.C. §1983 claims violations of Thomas' Fourth Amendment rights

5  (excessive force), and asserts related state-law claims for wrongful death, survival, and

6  negligence. This Court dismissed all claims against the United States, the DOI, and the BIA, as

7  well as all common law tort claims against Greg Graves.

8      The remaining claims are Black's § 1983 and tort claims against the Tribes and Kitsap

9  County, and her § 1983 claims against Graves and the unnamed officers. The Tribes seek

10  dismissal of these claims, arguing that tribal sovereign immunity protects the tribes and the

11  individual tribal police officers from suit. Black argues that the officers were acting under color

12  of state law and that sovereign immunity does not apply. She also claims that the Tribes waived

13  immunity by treaty.

14                **II.     Discussion**

15  **A.    Standard to Dismiss for Lack of Subject Matter Jurisdiction**

16      A complaint must be dismissed under Rule 12(b)(1) if, considering the factual allegations

17  in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution,

18  laws, or treaties of the United States, or does not fall within one of the other enumerated

19  categories of Article III Section 2 of the Constitution; (2) is not a case or controversy within the

20  meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v.*

21  *Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063

22  (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United

23  States as a defendant).  When considering a motion to dismiss pursuant to Rule 12(b)(1), the

24

1 court is not restricted to the face of the pleadings, but may review any evidence to resolve factual

2 disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560

3 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d

4 1375, 1379 (9th Cir. 1983). A federal court is presumed to lack subject matter jurisdiction until

5 plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375

6 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore,

7 plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West*, 873

8 F.2d at 1225.

9 **B. Claims Against the Tribes**

10   Indian tribes are not subject to suit unless they waive their sovereign immunity or

11 Congress expressly authorizes the action. *Kiowa Tribe of Oklahoma v. Manuf. Technologies,*

12 *Inc.*, 523 U.S. 751, 754 (1998). This immunity extends to all enforcement of tribal law

13 regardless of where it occurs. *Id.*; *Young v. Duenas*, 164 Wash. App. 343, 348 (2011). Any

14 waiver of tribal sovereign immunity must be unequivocally expressed and cannot be implied.

15 *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). As a general rule, an interest in

16 preserving tribal autonomy dictates that tribal courts, rather than federal courts, serve as the

17 exclusive authority for adjudication of disputes implicating important interests of both Indians

18 and non-Indians. *Id.* at 65.

19   Nothing in this case suggests that the Suquamish and Port S'Klallam Indian Tribes are no

20 longer entitled to tribal sovereign immunity. Black's claim that immunity does not extend to

21 incidents occurring on non-Indian fee land is incorrect. The officers were enforcing a tribal

22 warrant under tribal law, against a member of the Suquamish tribe, within the boundaries of the

23 reservation. Immunity exists despite the fact that the incident occurred on non-Indian fee land.

24

1    Black also argues that the Treaties of Point Elliot and Point No Point, to which both

2    Defendant tribes are bound, contain an explicit waiver of sovereign immunity.  But they instead

3    represent only a general agreement to be friendly:

> The said tribes and band acknowledge their dependence on the Government of the United States, and promise to be friendly with all citizens thereof, and they pledge themselves to commit no depredations on the property of such citizens.

6    [Pl.'s Reply, Dkt. #69 at 9].

7    This language does not constitute an unequivocal waiver of tribal sovereign immunity.  It

8    contains neither the words "waiver" nor "immunity." Therefore, Black's claims against the

9    Suquamish and Port Gamble S'Klallam Indian Tribes are barred by tribal sovereign immunity.

10   The Tribes' Motions to Dismiss are GRANTED and Black's claims against them are

11   DISMISSED.

12   **C.     Claims Against the Tribal Officers**

13   Tribal sovereign immunity, like other types of sovereign immunity, extends to officers

14   acting in their official capacity and within the scope of their authority. *Cook v. AVI Casino*

15   *Enterprises, Inc.*, 548 F.3d 718, 728 (9th Cir. 2008).  However, this does not alter "the rule that

16   individual capacity suits related to an officer's official duties are generally permissible."

17   *Maxwell v. County of San Diego*, 708 F.3d 1075, 1088 (9th Cir. 2013); *Hafer v. Melo*, 502 U.S.

18   21, 27 (1991) (finding that state officials may be held liable in their personal capacity for

19   individual, unlawful actions taken in an official capacity).

20    In the context of a § 1983 claim against a tribal officer in his or her *individual* capacity,

21   the plaintiff still has the burden of demonstrating § 1983's dual requirements that: (1) the

22   allegedly unlawful conduct was committed by a person acting under the color of state law, and

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT TRIBES' JOINT MOTION
TO DISMISS - 5

1   (2) such conduct deprived the plaintiff of constitutionally-protected rights, privileges, or

2   immunities. *Evans v. McKay*, 869 F.2d 1341, 1347 (9th Cir. 1989).

3         Regarding the first element, an action is under color of state law when the state's role in

4   the action is "significant".  *Lopez v. Dept. of Health Services*, 939 F.2d 881, 883 (9th Cir. 1991).

5   The degree of state involvement is a question of fact.  *Id.* Generally speaking, tribal officers

6   "who act in concert with officers of the state are acting under the color of state law within the

7   meaning of section 1983." *Evans*, 869 F.2d at 1348.

8         Black's complaint is unclear as to whether she is suing Graves and other unnamed

9   officers in their individual or official capacities.  Because the Complaint alleges constitutional

10  violations arising from the tribal officers' specific, individual actions, this Court assumes that

11  Black intended to sue the tribal officers in their individual capacities, which is the only way that

12  she can maintain a claim against the individual officers.

13        For the first element of her § 1983 claim, Black argues that Graves and the other officers

14  were acting within the scope of their employment and under color of state law by recruiting the

15  Kitsap County Sheriff's office to assist in executing the arrest warrant. The tribal officers were

16  acting cooperatively with the state police to ensure that proper authority was present at the scene

17  since the Black residence was on non-Indian fee land and there was a possibility that the Blacks

18  were nontribal. Since the extent of state involvement is a question of fact, a jury could find that

19  obtaining backup from the state police amounted to an act under the color of state law.  The

20  officers' warrantless entrance into her home resulting in Thomas' death would appear to be a

21  possible infringement of constitutional protections, but at this stage, the only relevant

22  determination is whether subject matter jurisdiction exists as to the tribal police. Since Black is

23  suing the officers in their individual capacities for actions taken within the scope of their

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT TRIBES' JOINT MOTION
TO DISMISS - 6

1  employment under the color of state law, she has established a cognizable claim under § 1983

2  that may proceed under the jurisdiction of this Court.

3                          **III.     Conclusion**

4           The unique complexities of tribal sovereignty render this Court an inappropriate forum

5  for Ms. Black to seek relief against the Indian tribes themselves. Her Complaint's allegations fail

6  to strip the Tribes of their sovereign immunity. Black does plead sufficient facts to state a viable

7  § 1983 claim against the tribal police acting in their individual capacities, under color of state

8  law.

9           For these reasons, Defendant Tribes' Motion to Dismiss Black's claims against the

10  Suquamish and Port Gamble S'Klallam Indian Tribes for lack of subject matter jurisdiction is

11  **GRANTED**. Black's Motion to Amend is **DENIED**, so her only remaining claims against tribal

12  Defendants are against Greg Graves. The Motion to Dismiss Black's claims against Graves is

13  **DENIED**.

14           IT IS SO ORDERED.

15           Dated this 8th day of July, 2014.

16

17           _____

18           RONALD B. LEIGHTON
             UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT TRIBES' JOINT MOTION
TO DISMISS - 7