HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHERRI BLACK,

                Plaintiff,

   v.

KITSAP COUNTY, et al.,

                Defendants.

CASE NO. 3:13-cv-05415-RBL

ORDER GRANTING KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT

[Dkt #s 46 and 84]

THIS MATTER is before the Court on Defendant Kitsap County's (converted) Motion for Summary Judgment.[1] During the execution of a tribal arrest warrant, tribal police officers shot and killed Thomas Black and detained his sister, Plaintiff Sherri Black, at their shared home. Kitsap County deputies were present as backup because, although the home was within a Reservation, the Blacks were not tribal members and the home was owned in fee simple.

Sherri Black sued. She claims the tribal officers (and the deputies) used excessive force (Fourth amendment violation) and conducted an unreasonable search and seizure (Fifth and Sixth

---

[1] Kitsap County has also filed a Motion for Clarification [Dkt. #84] of the Court's prior Order [Dkt #83] Denying Plaintiff's Motion to Amend [Dkt. #66]. The Motion to Amend was and is DENIED, in its entirety. The Motion for Clarification is, to that extent, GRANTED, and the clerk should terminate the Motion for Clarification [Dkt. #84].

amendment violations). She did not, however, sue the deputies. Instead she brought a 42 U.S.C. §1983 *Monell* claim against the County, claiming it failed to train its deputies how to handle such a situation, and that its failure amounted to deliberate indifference to the Blacks' constitutional rights. She also argues, as she must, that the County's indifference was a moving force behind the underlying constitutional violations—primarily, her brother's death.

The County argues that there is no evidence that it failed to train its deputies; any lapse in training cannot be construed as "deliberate indifference"; and no reasonable jury could find that any indifference was a "moving force" behind any constitutional violations.

## I.   BACKGROUND

On December 8, 2011, Port Gamble S'Klallam and Suquamish Indian tribal police officers learned that Stacy Stanley Callihoo—tribal member with an outstanding Suquamish tribal arrest warrant—was staying at Sherri and Thomas Black's Kitsap County home. The home was within the reservation, on fee simple land. The tribal officers met with Kitsap County Deputies Michael Grant and David Fortenbacher to solicit their support in case issues arose with non-tribal members, like the Blacks. The officers planned to serve the warrant, and the deputies planned to provide backup.

Later that day, the tribal officers and the deputies approached the Blacks' home. The officers knocked on the door and announced their presence. Sherri Black appeared to speak for a minute with someone in another room before answering the door. She answered the door and spoke with the officers for about a minute and then walked outside.[2] She told the officers that

---

[2] Sherri Black's Complaint claims that as soon as she answered the door, she was handcuffed and dragged by her arms across the yard away from the home, likely by Suquamish Tribal Officer Swift Sanchez. However, she has not offered any evidence to support this assertion. Nor does she claim, at all, that a Kitsap County deputy handcuffed or dragged her.

ORDER GRANTING KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT - 2

Callihoo was inside, and the tribal officers and Deputy Grant entered the home. When they got inside, the officers saw Thomas Black at the opposite end of the home lying on a couch. The officers claim he appeared to have a concealed gun and refused their requests to show his hands. As he was moving on the couch, Port Gamble S'Klallam Detective Greg Graves shot him. The tribal officers and Deputy Grant could not immediately locate Callihoo, so they retreated outside. The ensuing standoff lasted over thirty minutes.  In the meantime, Thomas Black died from a wound to his femoral artery. The standoff ended when Callihoo was  arrested at the Blacks' home.

     Black's *Monell* claim against the County alleges that it failed to train its officers in several related ways. She claims the County failed to train its deputies how to properly coordinate with tribal police; failed to train them when and how to obtain a search warrant; failed to train them on proper detention procedures; and failed to train them to provide medal assistance to suspects who have been shot.

     The County argues[3] that Black's *Monell* claim is not factually or legally viable.  It claims that she does not, and cannot, identify a constitutionally inadequate feature of its training program, and that she cannot articulate how better or different training would have changed the incident's outcome.  And, it argues, even if its training was somehow deficient, it does not amount to the required "deliberate indifference" as a matter of law.  Finally, the County argues that its training was not a moving force behind any constitutional violations.

---

[3] The County initially moved to dismiss Black's *Monell* claims against it, and Black's response relied on evidence outside her complaint.  The Court converted the motion to one for summary judgment and gave Black an opportunity to provide additional evidence and argument, which she has done.

ORDER GRANTING KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT - 3

## II.     DISCUSSION

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### A.     Black's § 1983 *Monell* claim against Kitsap County

A municipality "may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom" can be shown as the "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). A plaintiff alleging a § 1983 violation against a municipality must prove four elements:

(1) that the plaintiff possessed a constitutional right of which she was deprived;

(2) that the municipality had a policy;

(3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and,

(4) that the policy is the moving force behind the constitutional violation.

*Dougherty,* 654 F.3d at 900 (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). But a failure to train may amount to "deliberate indifference," if the need to train was obvious and the failure to do so made a violation of constitutional rights likely. *Dougherty,* 654 F.3d at 900. (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

A § 1983 failure to train claim has three elements: (1) the training program was inadequate "in relation to the tasks the particular officers must perform"; (2) the municipality officials were deliberately indifferent "to the rights of persons with whom the local officials come into contact"; and (3) the inadequacy of the training "'actually caused' the constitutional deprivation at issue." *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). A municipality may be liable for inadequate police training when "such inadequate training can justifiably be said to represent municipal policy" and the resulting harm is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2009) (quoting *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

Black accuses the County of failing to train its deputies in four areas. First, she claims that the County failed to train its deputies how to work with tribal police. Black cites testimony that the deputies and tribal officers worked together on numerous occasions and, despite this, they did not know whose responsibility it was to obtain a search warrant for the Blacks' home. She argues that failing to establish joint procedures amounted to deliberate indifference on the

part of the County, and the failure led to the violation of her and her brother's constitutional rights.

Second, she claims that the County failed to train its deputies about when to obtain a search warrant and that failure led to Detective Grant's illegal entry into their home.  As evidence of the County's failure to train, she points to Deputy Grant's testimony that the arrest warrant and circumstances at the Blacks' home were insufficient to merit entry into the home. Third, she claims that proper training should have prevented her illegal detention. Finally, Black claims the deputies should have been trained that they needed to provide medical assistance to Thomas Black after he had been shot.

The County argues that there is no evidence that the County's training procedures were inadequate. The County argues that even if the training was inadequate, no reasonable jury could find that the County was deliberately indifferent toward the training inadequacies, or find that these inadequacies were the moving force behind the alleged constitutional violations[4].

Here, Black alleges, at most, that the root cause of the deputies' alleged use of excessive force and illegal search and seizure was that the deputies were inadequately trained to work with tribal officers and with tribal issues.  But even viewed in the light most favorable to Black, the evidence would not permit a reasonable jury to find that the County's training—or lack thereof—amounted to the required deliberate indifference.  The tribal officers *did* have an arrest warrant, and they—not the deputies—were responsible for serving it.  Black has not articulated how or why the outcome would have been different if the deputies had received some different or better training in serving or executing warrants, or in detaining suspects, or in rendering medical aid.

---

[4] Indeed, it is not at all clear that, had she sued them, Black could make out a prima facie case of a constitutional violation by a Kitsap County deputy.  There is no evidence that a deputy shot or injured anyone, or detained Sherri Black unlawfully.

Nor could a reasonable jury find that any failure on the County's part was a moving force behind any possible violations of the Blacks' constitutional rights. Even though Deputy Grant entered the Blacks' home, Black must show that the County failed to train its deputies about proper entry procedures, *and* that that failure was the moving force behind the violation of some constitutional right. She does not present any evidence of this. The deputy did not conduct a search, or fire his weapon, at all. There is no evidence that, even if his brief entry was unauthorized—a questionable contention if it occurred at or after the time Officer Graves was confronting what he thought was an armed suspect—it was the result of some systemic County failure to train its deputies on when and how to enter homes. There is no evidence that, had the deputy remained outside the home, the outcome would have been any different. There is no evidence of the required deliberate indifference, as a matter of law.

Finally, Black has failed to provide any evidence that she was unconstitutionally detained[5] or that some lack of training on the County's part caused Thomas Black to bleed to death. Black has not shown (and cannot show) that—even viewed in the light most favorable to her—the evidence would permit a reasonable jury to find that the deputies' lack of training about collaborating with tribal officers, obtaining search warrants, about detaining suspects or witnesses, or providing medical assistance was the moving force behind any alleged violation by the *County's deputies*. The deputies are not vicariously liable for the actions of the tribal officers, and neither is the County.

---

[5] Black appears to assert a claim for "wrongful detention" but the only evidence she supplies in support of that claim is that, after she was handcuffed, Deputy Fortenbacher "spoke with her." This is not a constitutional violation as a matter of law, and any such claim is DISMSSED.

### III. CONCLUSION

There is no evidence that the County failed to properly train its deputies, that any training inadequacies amounted to deliberate indifference, or that the County's failures were a moving force behind any constitutional violation. Accordingly, the County's Motion for Summary Judgment is GRANTED and Black's claims against Kitsap County are DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 22nd day of September, 2014.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE